# PHILLIP A. PERRON AND ANOTHER v. VILLAGE OF NEW BRIGHTON.

145 N. W. (2d) 425.

September 30, 1966—No. 40,130.

*Josiah E. Brill, Sr.,* and *Brill & Brill,* for appellants.
*Perry W. Copeland,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Phillip A. Perron and Elizabeth Perron, his wife, as owners of real property in the village of New Brighton, instituted this action against the village for a declaratory judgment that the village comprehensive zoning ordinance as it affects plaintiffs' property is unreasonable, arbitrary, discriminatory, and void.

On May 11, 1964, plaintiffs petitioned the village to have their property rezoned from single-family residential use as provided in the ordinance to multiple-family-dwelling residential use. Attached to the petition was a document containing the written consent of 50 percent or more of the property owners within 200 feet of the property. At a public hearing on the petition held by the village council, written and oral objections were presented by a number of people residing in the village. The council thereupon denied the petition, giving as reasons for its denial the following:

"(a) The Village has made adequate zoning provision for Multiple Family Residences in its comprehensive zoning map and Ordinance # 188.

"(b) That Cleveland Avenue, which bounds plaintiffs' property on the west, is the logical and most advisable dividing line between existing industrial and multiple family zoning to the west and single family residence zoning to the east.

"(c) That the area of the Village in which plaintiffs' property is located has no park facilities whatsoever and to permit more multiple family residences would increase the population density and intensify the safety and welfare problems for children in the area.

"(d) That plaintiffs' property is well suited to single family residence development.

"(e) That plaintiffs' property has been zoned for single family res-

idences for many years and at all times that plaintiffs were the owners; that plaintiffs, prior to petitioning for rezoning had never objected to the single family zoning of their land and many persons in the area had built or bought their homes in reliance on such zoning of plaintiffs' property.

"(f) That Cleveland Avenue is a heavily travelled street and to permit construction of multiple family residences thereon would create an unsafe condition for children living in such apartments and an increased traffic hazard.

"(g) That erection of multiple family residence buildings on plaintiffs' property would reduce the market value of surrounding single family residences."

On appeal to the district court from the denial of their petition, the court, after trial, made findings which upheld the council's action. Therein, as justification for it, the court recited the reasons which the council gave for denial of the petition as set forth above. It is plaintiffs' contention here that the evidence presented in district court established conclusively that the council's action was arbitrary and discriminatory and that no evidence whatever was presented, either before the court or at the council hearing, which would justify the action of the council in denying their petition.

The facts are as follows: Plaintiffs have owned the tract involved for about 23 years. It was used for farming purposes until 1959. Thereafter, under several successive comprehensive zoning ordinances of the village, it was always zoned for single-family residential use. It is bounded on the west by Cleveland Avenue; on the north by Second Street Southeast; and on the south by Fourth Street Southeast, which divides the village of New Brighton from the village of Arden Hills. It is approximately 2 blocks in length and extends easterly from Cleveland Avenue for approximately 135 feet to an alley.

On the west side of Cleveland Avenue and facing plaintiffs' property is a tract formerly owned by plaintiffs which originally was zoned for single-family structures. There has been constructed on this property a 69-unit apartment building which was authorized under an amendment to the comprehensive zoning ordinance requested by plaintiffs when they were the owners of this tract. The amendment included

only so much of this tract as is presently occupied by the 69-unit building. To the north and south of it are single-family structures and the remainder of the tract continues to be zoned only for construction of this type of building.

Attached to the plaintiffs' present petition for rezoning was plaintiffs' written proposal under which they requested a permit to construct 13 4-unit, 1½-story structures on the east side of Cleveland Avenue. This proposal also indicated that for each of these structures there would be erected a 4-car garage, and that additional parking space would also be available. The present comprehensive zoning ordinance contains classifications for two types of residential property—single-family structures and multiple-dwelling structures. In other words, if plaintiffs' property is rezoned as plaintiffs request, it could be used for multiple-dwelling structures without limitation as to the number of units therein.

The evidence submitted in the district court proceedings included the following:

Phillip A. Perron testified that he and his wife were the owners of the tract involved and had formerly owned the land across from it, fronting on Cleveland Avenue from the west, which had been rezoned for multiple-family dwellings at his request and which was now partially occupied by a 69-unit apartment building; that with respect to the tract now under consideration he had entered into negotiations for its sale to William Wilske, conditioned upon the application for rezoning being granted; that as part of the plan Mr. Wilske and he had agreed that if rezoning were granted 13 4-unit structures were to be built on the tract; and that all property owners adjacent to the tract had consented to the proposed rezoning. This arrangement was confirmed by Mr. Wilske in his testimony. He also testified that a 16-foot public alley to the rear or east of them which Perron would dedicate would give access to the tract.

Richard A. Andersen, a member of defendant's council and of its planning commission, testified that he had voted in favor of plaintiffs' petition because in his opinion the proposed 4-family units would not adversely affect the health, safety, or public welfare of any occupants

of the adjacent property or anyone else in the village; that they would not result in any traffic problems on Cleveland Avenue; that property in the area would not be adversely affected by their construction; that in his opinion a reasonable buffer between the multiple-dwelling zone and single-family-dwelling zone would result if multiple dwellings were to be permitted on both sides of Cleveland Avenue, but only single-family dwellings were to be permitted to the east of the proposed 16-foot alley; and that this would be a proper division because to the west of Cleveland Avenue there was a new freeway which presently relieved Cleveland Avenue of much of its former traffic, and to the south of the tract involved a commercial area was already in existence.

William L. Chase, an expert in real estate valuations in the area, testified for plaintiffs that in his opinion the erection of the 4-family dwellings on the east side of Cleveland Avenue would not materially lessen the value of any residences thereon, but on the contrary would upgrade the entire district; and that under the present zoning ordinance plaintiffs' property had a fair market value of $28,800, while if it were rezoned for 4-family dwellings as proposed its reasonable market value would be $49,600. He pointed out that Cleveland Avenue is no longer a through street; that the new freeway has relieved it of much of its former traffic; and that in his opinion no traffic problems would arise because of the construction of the 4-unit dwellings. He conceded that in comparison with the rest of the streets in the village Cleveland Avenue is more heavily traveled. He expressed his opinion that Cleveland Avenue would constitute a proper buffer or dividing line between multiple dwellings and single-family dwellings, with multiple dwellings facing Cleveland Avenue from both sides, while to the east beyond the 16-foot alley the area would be limited to single-family dwellings.

Lawrence L. Haglund, a member of the New Brighton council who had voted against the petition for rezoning, testified that at the meeting at which it was considered he had heard objections from a number of people living in the area, who had also presented a written petition opposing it; that in his deliberations on the question, he considered the fact that there were no parks in this area; and that construction of the 4-unit dwellings and a subsequent increase in the density of population

in the area might create traffic hazards; that he was aware of the proposal to dedicate a 16-foot alley to the east of plaintiffs' tract for the purposes of ingress to and egress from the proposed structures, but that in his opinion this would create a traffic hazard to property owners abutting the alley from the east; that in adopting the comprehensive zoning ordinance the council had given consideration to the overall requirements of the village for industrial, commercial, multiple-family, double-family, and single-family classifications with buffer or dividing lines between them and that the council had followed the advice of an expert retained by the village to recommend a feasible comprehensive zoning plan; that he believed that the comprehensive zoning ordinance adopted as a result of such requirements was correct and should be retained; that based upon the expert's recommendations, the council had considered the need for proper buffers between the various zones and had determined that on the west of Cleveland Avenue there should be multiple-family dwellings, while on the east side of it and to the east therefrom there should be single-family dwellings, and that thus zoned Cleveland Avenue would create a proper buffer or boundary line between these two zoning classifications.

John A. Miller, a member of the council, testified that he was present at the meeting when the petition was considered and had listened to all arguments, pro and con, on the proposed plan; that he had voted against it and that in doing so had considered many possible factors before making his decision; and that his vote was based on his belief that the original comprehensive zoning ordinance which the council had adopted was carefully planned and considered and that he had no desire to change it. He gave consideration to the facts that many people in the area opposed plaintiffs' petition; that plaintiffs' tract is in a small confined area with little space for children to play and the additional children coming in, if it were zoned for multiple dwelling, might create a traffic hazard by reason of their normal tendency to play in the streets; that this would be detrimental to the welfare of the people in the area; and further that the proposed rezoning would "circumvent people who live in an area, that try to upgrade it, that try to better it,

I think this is wrong"; and that in voting as he did he followed the recommendation of the professional planner for the zoning.

■ It is well established that comprehensive municipal zoning ordinances which create restricted residential districts with appropriate dividing lines or buffers separating them from other zoning classifications are valid under the police powers of a municipality if the classification bears some reasonable relationship to public safety, health, or welfare. Connor v. Township of Chanhassen, 249 Minn. 205, 81 N. W. (2d) 789; State v. Modern Box Makers, Inc. 217 Minn. 41, 13 N. W. (2d) 731. It is also well settled that where the location of such dividing lines is based upon a valid exercise of the police power the courts will not interfere with the action of a municipal council in designating such divisions even though the reasons supporting the council's choice may be debatable. State ex rel. Howard v. Village of Roseville, 244 Minn. 343, 70 N. W. (2d) 404. See, Annotations, 86 A. L. R. 659, 667, and 117 A. L. R. 1117. Of course, if it can be shown that a particular zoning classification bears no relationship to the health, safety, or public welfare of a municipality, or that the classification is arbitrary and discriminatory in so far as it relates to different property owners affected by it, the courts should not hesitate to invalidate the classification on constitutional grounds. Pearce v. Village of Edina, 263 Minn. 553, 118 N. W. (2d) 659.

■ In the instant case the issue is whether in establishing the center of Cleveland Avenue as a dividing line between areas zoned for multiple-family structures and areas zoned for single-family structures the defendant village acted within the scope of its police power. The council's actions in establishing the center of Cleveland Avenue as the dividing line under the comprehensive zoning ordinance was based upon a number of factors. It appears that the village had employed an expert to recommend a sound comprehensive zoning ordinance which would meet not only the present requirements of the village but which would take into consideration its future growth and development. Based upon this expert's recommendation the council unanimously determined that the center of Cleveland Avenue should constitute the buffer between the areas described. The record indicates that factors to which the

council gave consideration in making this decision included the fact that the new freeway is adjacent to the westerly side of the multiple-family zone and west of the freeway there is presently a commercial zone; while to the east of the center of Cleveland Avenue the entire area appears suitable for single-family structures. The evidence discloses further that in determining this question a majority of the members of the village council considered that the numerous additional families and children who would live in this area if multiple-family structures were permitted on the easterly side of Cleveland Avenue would create traffic hazards because of the normal tendency of children to play in the street in the absence of parks and that this in turn would affect the public welfare of other residents of the village who had purchased property in reliance upon the comprehensive zoning ordinance described. As stated in Real Properties, Inc. v. Board of Appeal of Boston, 319 Mass. 180, 183, 65 N. E. (2d) 199, 201, 168 A. L. R. 8, 11:

"* * * That the premises are contiguous to an area zoned for business is of slight weight when such contiguity existed at the passage of the zoning act, which vests in the board of zoning adjustment in narrow limits the power to change zone district boundaries. * * * A district has to end somewhere. Care should be taken lest the boundaries of a residence district be pared down in successive proceedings granting variances to owners who from time to time through such proceedings find their respective properties abutting upon premises newly devoted to business purposes."

All such evidence would seem to indicate that the council had a valid basis under its police power for its action in creating the buffer or dividing line referred to under the comprehensive zoning ordinance. This being true, it would follow that in denying plaintiffs' petition for rezoning of their property the council did not act in an arbitrary, discriminatory, or capricious manner. It would also follow that under such facts and circumstances the district court was correct in upholding the action of the council in this respect.

Affirmed.