## ROBERT KELBER v. CITY OF ST. LOUIS PARK.

185 N. W. (2d) 526.

March 12, 1971—No. 42222.

*Lifson, Kelber, Abrahamson & Weinstein* and *Joseph L. Abrahamson,* for appellant.

*O'Connor, Green, Thomas, Walters & Kelly* and *Kenneth W. Green,* for respondent.

Heard before Knutson, C. J., and Nelson, Otis, Kelly, and Frank T. Gallagher, JJ.

OTIS, JUSTICE.

This is an action to require the city of St. Louis Park to rezone four lots from a two-family residence district to a residential-business district. The city planning commission recommended that plaintiff's application be granted. However, after two public hearings, the city council denied the application. In a subsequent action for declaratory judgment, the city's refusal to rezone was sustained. Plaintiff appeals from an order denying his motion for a new trial.

The property here in question consists of two single-family dwellings located at 4609 and 4615 Minnetonka Boulevard. They are situated on four lots on the south side of the street, between Natchez and Monterey Avenues. In June 1966, plaintiff and a predecessor in interest applied to the city to rezone this property from R-3 two-family residence district to R-4 one-to-eleven family residence district. While the matter was before the planning commission, the application was amended to secure a rezoning to R-B residential-business district. The zoning thus sought would permit, in addition to R-4 uses, the following:

"* * * [M]ultiple dwellings for any numbers of dwelling units, boarding houses, nursing homes, rest homes or old people's homes and other similar uses, hospitals for human care, sanitariums, motels, motor hotels and hotels, private clubs and lodges which are not operated for profit, community centers, public or private swimming pools, fraternity and sorority houses, day nurseries and nursery schools, private schools, colleges and universities, offices, clinics for human care and funeral homes and mortuaries, * * *."

In October 1966, the planning commission recommended that the application be granted. Two public hearings followed in No-

vember. At these hearings, residents in the neighborhood voiced strong opposition to the rezoning, and the application was thereupon denied. This declaratory judgment suit followed.

Plaintiff bases his claim for relief on the fact that only two other properties are zoned R-3 in the mile-long stretch of Minnetonka Boulevard from France Avenue to Highway No. 100. Thus plaintiff asserts he is subjected to an unconstitutional discrimination which reduces the value of his property from $74,000 to a value ranging from $18,000 to $24,000. Plaintiff stresses the fact that in the area from France Avenue to Highway No. 100, only 16 properties contain private residences of which 3 are zoned R-B; 7 are multiple-dwelling apartment houses; 29 are used for commercial and business purposes; and 3 serve both as private residences and business establishments. Only 5 properties out of the 59 are not in actual use or zoned for commercial-business purposes.

In this posture, plaintiff relies for reversal on Pearce v. Village of Edina, 263 Minn. 553, 118 N. W. (2d) 659. However, we are of the opinion that the Pearce case is not decisive of the issues. There, the trial court found that the city's refusal to rezone for a shopping center was arbitrary and discriminatory because the property in question was surrounded by commercial property compatible with the use which petitioner sought. We held in Pearce (263 Minn. 572, 118 N. W. [2d] 671):

"* * * Such evidence clearly establishes that the new ordinances bear no valid relationship to issues of public welfare, health, or safety, and when it is considered that the entire area surrounding plaintiffs' property is presently in use or zoned for commercial purposes identical to those denied plaintiffs for their property, the underlying design of defendant to protect present enterprises in the area from competition is clearly revealed."

That is not the situation in the case before us. We think petitioner paints with too broad a brush in treating Minnetonka Boulevard from France Avenue to Highway No. 100 as a single,

integrated area. In the block between Natchez and Monterey Avenues, where plaintiff's two houses are located, the only other building is a single-family residence at the east end of the block. Immediately across Minnetonka Boulevard are six attractive, typically residential homes. On the southeast corner of Monterey and Minnetonka, there is a single-family dwelling. On the north side of the street between Natchez and Ottawa Avenues is a combination home and doctor's office and two private family dwellings. Another such residence is located immediately to the west on the northwest corner of Ottawa and Minnetonka. In other words, there is a row of 10 single-family dwellings across the street from plaintiff's property and a row of 4 such homes, including plaintiff's, on the south side of the street. Immediately west of plaintiff is an apartment building, and kitty-corner to the northeast is the Day Star Ministry Center, a residence devoted to the care of needy persons. Although all but two of the other homes are located on property zoned for multiple-family dwellings, at the present time they are not put to such use. What is equally significant is the fact that nearly all of the property which lies ½ a block north and ½ a block south of Minnetonka Boulevard is uniformly residential in character. We think it is myopic to view the action of the city council only by reference to the uses to which Minnetonka Boulevard itself is presently, or can hereafter be, devoted.

In denying the application, the city council considered, among other things:

"The contention of surrounding residents that the development of Minnetonka Boulevard as a high density residential or business strip should at some point be stopped before the residential character of the area is completely destroyed.

\* \* \* \* \*

"\* \* \* The almost entirely residential character of the surrounding neighborhood to the South and to the North including the property directly across Minnetonka Boulevard from the subject property.

"The narrow and poor character of the existing side roads and feeder streets in the subject area.

\* \* \* \* \*

"The traffic and parking problems in the subject area.

"The desire of the residents of the surrounding area that the area maintain a residential character.

"The danger that piece meal rezoning might wear down the residential character of the area by successive proceedings."

The court below found that Minnetonka Boulevard retains its overall residential character and appearance and that the proposed rezoning would be inconsistent with the city's comprehensive plan for the development of the community as a whole. The court held that the council did not act unreasonably, arbitrarily, or capriciously, but to the contrary it proceeded in conformity with the health, safety, and welfare of the neighborhood and the city.

In an accompanying memorandum the court cited Perron v. Village of New Brighton, 275 Minn. 119, 126, 145 N. W. (2d) 425, 430, where we approved language in a Massachusetts case to the effect that a business district has to end somewhere. Other factors which the trial court considered were the wishes and objections of the neighbors, the narrow feeder streets and resulting parking problems, the volume of traffic on Minnetonka Boulevard, and the fact that sewers serving the area were already taxed nearly to capacity.

We concur in the conclusions of the trial court for the reasons we have suggested. The particular property involved in this appeal was restricted to residential purposes when plaintiff purchased it. It is in a block which is entirely residential in character. There are no business properties in the immediate vicinity, except a doctor's office in his own home. It is not unreasonable or arbitrary for the city to conclude that it should go no further in relaxing zoning restrictions to permit additional commercial encroachment. The fact that property zoned for residential purposes has greater value if used for commercial purposes has

never been grounds for rezoning where the surrounding property is predominately residential. Since most of the adjacent area is zoned for multiple-family residences, the area in which plaintiff's property is located may, in the future, be developed for that purpose, in which event it will be time enough for plaintiff to seek a rezoning consistent with that use. Until then, the denial of plaintiff's application is proper.

Affirmed.