## SUN OIL COMPANY v. VILLAGE OF NEW HOPE.

220 N. W. 2d 256.

July 5, 1974—No. 43862.

*William J. Corrick, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, J. Richard Bland,* and *O. C. Adamson II,* for appellant.

*Rosen & Summers, William S. Rosen,* and *Howard L. Kaplan,* for respondent.

Heard before Knutson, C. J., and Rogosheske, MacLaughlin, and Yetka, JJ., and considered and decided by the court.

ROGOSHESKE, JUSTICE.

Sun Oil Company brought this declaratory judgment action to compel the village of New Hope to rezone a tract of land owned by Sun Oil from Limited Business (LB) to General Business (GB) and to waive the existing platting ordinance to allow erection of a gasoline service station on the land. The trial court granted judgment in favor of plaintiff, ordering the village council to change the zoning classification of plaintiff's property from LB to GB. After a denial of its motion for amended findings, defendant village appealed from the judgment entered. Since the undisputed facts establish that the village's denial of the rezoning request was based upon the village's reasonable adherence to its comprehensive zoning ordinance, we reverse.

The parties agree that the operative facts are undisputed. Sun Oil's approximately 1-acre rectangular tract of unimproved land, referred to as the subject property, is located in defendant village at the southwest corner of the intersection of 36th Avenue North and Hillsboro Avenue approximately 100 feet east of the exit ramp for northbound traffic from County Road No. 18 to 36th Avenue North. It has a frontage of 215 feet on 36th Avenue North, which runs east and west, and 200 feet on Hillsboro Ave-

nue, which runs north and south. It lies in the northeast corner of a larger 6.25-acre tract of unimproved land abutted by County Road No. 18 on the west, 36th Avenue North on the north, Hillsboro Avenue on the east, and 35th Avenue North (if it were extended westerly) on the south. Immediately across 36th Avenue North from the subject property is a Shell service station. The construction of the Shell station in 1967, and subsequently the construction of a shopping center on an approximately 3-acre tract surrounding the Shell station on the north, were approved in November 1966 upon an application for a zoning change by the then owner of that tract.

Sun Ray D-X Oil Company, which later merged with Sun Oil Company, obtained an option to purchase the subject property in December 1966. The purchase was consummated on January 3, 1969. An application to the village to change the zoning classification from LB to GB was made October 9, 1968.

On January 18, 1960, the village, in preparation for revising its existing zoning regulations, published a comprehensive development plan after an extensive study by the village planning commission, the village planner, and professional planning consultants hired by the village.[1] The development plan designated

---

[1] The village's first zoning ordinance was adopted in 1954. Under it, lands on both sides of 36th Avenue North were zoned commercial with gasoline service stations permitted in such zone upon the issuance of a special-use permit. In 1959, when a major revision of the 1954 ordinance was enacted eliminating large areas from the commercial zone, two 200- by 200-foot areas located in the northeast and southeast corners of the intersection of 36th Avenue North and County Road No. 18 were zoned commercial. Both of these areas were later substantially acquired by Hennepin County for the construction of the exit and entrance ramps from County Road No. 18 to 36th Avenue North. It is important to note that the 1959 ordinance also rezoned the surrounding lands SR (single residence), which included both the approximately 6.25-acre tract (including the subject property) surrounding the 200- by 200-foot commercial zone in the southeast corner of the intersection and the approximately 3-acre tract (including the site of the present Shell station) surrounding the 200- by 200-foot commercial zone in the northeast corner of the intersection.

the subject property and the surrounding unimproved and vacant land, about 6 acres in area on the south and 4 acres in area on the north of 36th Avenue North, for potential development as shopping centers. The plan also contemplated that the east-west highway, 36th Avenue North, would be a major arterial highway and that County Road No. 18, which then intersected 36th Avenue North at grade, would be a limited-access freeway.

Implementing the plan on June 23, 1960, a new comprehensive zoning ordinance, Ordinance No. 60-19, became effective. It established, in comparison to earlier standards, a more sophisticated set of zoning classifications. The following pertinent classifications are reproduced from Ordinance No. 60-19:

"SECTION III DISTRICT PROVISIONS

"A. DISTRICTS

"1. SR Single-Family Residence Districts: This is the general single-family residence areas.

"2. MR Multiple-Family Residence Districts: These are areas deemed well-suited to apartment developments.

"3. LB Limited Business Districts: These are areas that are particularly exposed to residential neighborhoods and are thus suitable only to those businesses having, relatively little incompatibility with residential use.

"4. RB Retail Business Districts: These are areas which, because of proximity to thoroughfare intersections and proper distance from similar centers, are suitable to those businesses catering to the shopping needs of the residential neighborhoods.

"5. GB General Business Districts: These areas are designed for those businesses that tend to service other businesses and industry rather than the homeowner. They also tend to be less compatible with residential areas than other types of business. Because of these factors, businesses in this zoning classification are concentrated and are as insulated as possible from residential areas."

Subd. D of section III expressly classified the automobile service station as a permitted use only in the GB district. However, the ordinance provided that service stations might also be permitted in RB districts if special-use permits are obtained.

Under the 1960 ordinance, two 200- by 200-foot areas located in the northeast and southeast corners of the intersection of 36th Avenue North and County Road No. 18 were rezoned from commercial to limited business. The stated purpose behind this reclassification was to advise the public that the vacant land near that intersection would be utilized for business use as stated in the comprehensive development plan but that the extent of such use could not be determined until the then indefinite plans for an interchange of highways 36th Avenue North and County Road No. 18 were completed. In addition, the 1960 comprehensive zoning ordinance merely continued the SR (single residence) classification of both the approximately 6.25-acre tract (including the subject property) surrounding the 200- by 200-foot LB zone in the southeast corner of the intersection and the approximately 3-acre tract (including the site of the present Shell station) surrounding the 200- by 200-foot LB zone in the northeast corner of the intersection, which SR classification had been assigned by a 1959 ordinance, Ordinance 59-13.[2]

Effective October 3, 1963, the village amended the 1960 zoning ordinance by adopting Ordinance No. 63-11. This amendment zoned as LB the 6.25-acre tract (including the subject property) at the southeast corner of the intersection of County Road No. 18 and 36th Avenue North. The same amendment zoned the land abutting the 6.25 acres on the south for multiple residential use. At the time of the 1963 amendment, the Hennepin County Highway Department's plans for the intersection of County Road No. 18 and 36th Avenue North provided for an overpass with no access to County Road No. 18 from 36th Avenue North. Subse-

---

[2] See, footnote 1, *supra*.

quently, the highway department adopted plans for a diamond interchange at County Road No. 18 and 36th Avenue North.[3]

In November 1966, the owner of the 200- by 200-foot parcel in the northeast corner of the intersection of County Road No. 18 and 36th Avenue North filed an application to rezone said parcel and the immediately abutting 3 acres from LB and SR, respectively, to RB. The application included a request for a special-use permit authorizing the building of an automobile service station on an approximately 1-acre parcel at the intersection of 36th Avenue North and Jordan Avenue and proposed that the balance of the requested RB property be used for a shopping center. The service station referred to is the present Shell station, which has been in operation since it was constructed in early 1967. The proposed shopping center immediately adjacent to the Shell station is actually more of a neighborhood convenience center and was under construction at the time of trial. The village council approved said application and rezoned the

---

[3] The included sketch of the area in question shows the zoning classifications at the time the plans for the interchange were completed.

above-described property to RB and granted a permit authorizing the construction of the Shell station.

Effective September 12, 1968, the comprehensive zoning ordinance was again amended, the effect of which eliminated the council's authority to grant special-use permits to allow automobile service stations in RB zoning areas. Thereafter, service stations were permitted without restriction only in GB districts.

On October 9, 1968, Sun Oil made application to the village of New Hope to change the zoning classification of the subject property from LB to GB for the stated purpose of allowing the property to be used for the operation of a service station.[4] At the same time, application was made for waiver of the platting ordinance as to the subject property. Hearing was granted before the village planning commission on November 5, 1968, at which one resident, Mr. James Johnston, objected to the proposed rezoning. According to the commission's minutes, Mr. Johnston felt another station was unnecessary, was concerned about the lights at the site, and also felt that the entire tract of land at the southwest corner of 36th and Hillsboro should be considered as a single unit. Upon voice vote, the planning commission denied Sun Oil's application. The commission's "Staff Findings and Comments" noted:

"3. There is a service station immediately across 36th Avenue from the subject site. Under the current county plan all access between #18 and Hillsboro would be taken with the construction of the interchange. This in turn would create some development problems for the remaining parcel that fronts on 36th Ave. It would appear that the waiver of the platting ordinance should not be permitted until a development plan is submitted for the entire corner.

"4. The proposed rezoning also does not meet the commonly

[4] At this time, Sun Oil merely held an option to purchase the subject property and lacked legal title to the premises. As stated previously, it was not until January 3, 1969, after its application was denied, that Sun Oil consummated its purchase of the subject property.

accepted standards for a change in zoning. It is true that the LB districts in the Village have not attracted much attention to date. The lack of development, however, is probably not the result of the zoning classification but rather because of a lack of a need for the uses permitted in the district—offices, medical and apartments. The currently permitted uses would make an excellent transitional use between the heavy traffic interchange and the single family use that exists or will develop to the south and east."

After hearing the objections of three neighborhood residents and the contentions of counsel representing Sun Oil, the village council, on November 25, 1968, likewise denied the rezoning request.

■ It is most important for purposes of our review to characterize properly the village council's action in denying Sun Oil's petition for rezoning. While a municipal governing body acts in an administrative or quasi-judicial capacity when it acts to deny an application for a special-use permit, it is well established that it acts in a legislative capacity under its delegated police powers when it adopts or amends a zoning ordinance.[5] Thus, when defendant's village council acted in this case to deny Sun Oil's petition to rezone or to enlarge the permitted use of a part of the village land area, it acted in its legislative capacity, for to effect the change requested an amendment to its existing zoning ordinances would have been necessary.

When judicially reviewing a legislative determination, the scope of review must necessarily be narrow. The rationale behind the limited nature of review in such cases is aptly set out in State ex rel. Howard v. Village of Roseville, 244 Minn. 343, 347, 70 N. W. 2d 404, 407 (1955):

"Insofar as zoning ordinances are concerned, it has frequently been held that what best furthers public welfare is a matter primarily for determination of the legislative body concerned * * *.

---

[5] See, Village of Euclid v. Ambler Realty Co. 272 U. S. 365, 47 S. Ct. 114, 71 L. ed. 303 (1926); State ex rel. Howard v. Village of Roseville, 244 Minn. 343, 70 N. W. 2d 404 (1955).

· "Even where the reasonableness of a zoning ordinance is debatable, or where there are conflicting opinions as to the desirability of the restrictions it imposes * * *, it is not the function of the courts to interfere with the legislative discretion on such issues."

■ In order to challenge successfully the legislative body's determination, proof must be submitted to establish either an unconstitutional taking or an action in excess of the powers delegated to the legislative body. See, 8A McQuillin, Municipal Corporations (3 ed.) § 25.279; Village of Euclid v. Ambler Realty Co. 272 U. S. 365, 47 S. Ct. 114, 71 L. ed. 303 (1926); State v. Houston, 210 Minn. 379, 298 N. W. 358 (1941).

■ Upon the evidence presented, the trial court determined that the denial of Sun Oil's rezoning petition by the village council operated to deny Sun Oil equal protection of the laws and was discriminatory, unreasonable, capricious, arbitrary, and void. We are compelled to disagree.

In arguing for a rezoning of the subject property, Sun Oil places great importance on the fact that a similar use—that of an automobile service station—exists directly north of the subject property across 36th Avenue North. The trial transcript is permeated with testimony and stipulations by which Sun Oil attempts to show that its subject property would make a more suitable site for a service station than the present Shell station site. While these contentions, which were only weakly disputed at trial, may well be true, it is clear that such an approach does not necessarily indicate that the village council's denial of the rezoning request was arbitrary or capricious.

It must be emphasized that in denying Sun Oil's petition the village council was at all times acting in furtherance of its comprehensive zoning ordinance. Because the village council's refusal to adopt the proposed rezoning was based on a desire to maintain its existing zoning structure, the proper mode of attack for Sun Oil was to prove that the 1960 comprehensive zoning ordinance as amended was arbitrary, capricious, or otherwise invalid, or that the neighborhood of the subject property had

undergone such a substantial change since the enactment of the original LB zoning classification as to make GB the *only* reasonable classification for the subject property. In an analogous situation, the court in Hardesty v. Zoning Board, 211 Md. 172, 177, 126 A. 2d 621, 623 (1956) noted:

"* * * [W]hen an application is made for reclassification from one zone to another, there is a presumption that the original zoning was well planned and was intended to be more or less permanent. Before a zoning board rezones property there should be proof either that there was some mistake in the original zoning or that the character of the neighborhood had changed to such an extent that reclassification ought to be made. The burden of proof * * * is upon the proponents of the change."

Scrutiny of the transcript reveals that Sun Oil offered no evidence before the village council or at trial which would support a finding that the most recent zoning of the subject property to LB was arbitrary, unreasonable, or otherwise invalid. Assuming, as we must, the validity of this zoning classification, we are compelled to regard the village council's action in furtherance of its comprehensive zoning ordinance as a reasonable legislative determination not subject to judicial interference.

While a similar use exists directly across the street from the subject property, it is clear that mere physical proximity between existing and proposed land uses does not of itself merit a rezoning of the subject property. The village council is vested with the police power to establish zoning districts and, necessarily, to fix boundary lines. Moreover, it cannot be overlooked that, even had the village zoned the property south of 36th Avenue North (including the subject property) for RB use as it previously had zoned the site of the present Shell station across the street, Sun Oil would still not have been able to construct a service station on the subject property; such a use, since the 1968 zoning ordinance amendment, required a GB location.

We acknowledge, as Sun Oil argues, that the village's 1960 development plan, which proposed that the intersection in question might in the future be a good location for a shopping center,

tends to support Sun Oil's contention that the subject property should be rezoned. However, the record establishes that a shopping center is a permitted use in an RB *or* GB zone; therefore a future rezoning to RB of the land south of 36th Avenue North would still allow a shopping center but would not permit a service station. And the construction of a shopping center north of 36th Avenue North does not itself require another shopping center on the south side of 36th Avenue North.

In ordering the village council to rezone the subject property, the trial court apparently relied on Pearce v. Village of Edina, 263 Minn. 553, 118 N. W. 2d 659 (1962). In that case, plaintiffs applied for rezoning of their property from "office building purposes" to "commercial use." While the Edina council denied plaintiffs' petitions for rezoning, the trial court, which was affirmed by this court, finding the council's denial unreasonable, confiscatory, arbitrary, and void, ordered the rezoning. The Pearce case, however, is clearly distinguishable. Plaintiffs' property in the Pearce case was virtually surrounded by commercial zoning and was characterized as a "peninsula" among commercial uses. Such is not the case with Sun Oil's subject property, which is bounded by extensive zones of single and multiple residences as well as limited business and retail business zones. As suggested by this court in a similar case, Kelber v. City of St. Louis Park, 289 Minn. 456, 458, 185 N. W. 2d 526, 528 (1971), where we held that a denial of rezoning which results from a desire to further a comprehensive plan is not unreasonable, arbitrary, or capricious, the petitioner for rezoning "paints with too broad a brush" in claiming that the subject property should be zoned for general business purposes because of the existence of a similar use across the street.

In reviewing the trial court's treatment of the effect of the change of conditions in the neighborhood of the subject property, we also find error. In its findings, the trial court determined that the change in plans for the intersection of County Road No. 18 and 36th Avenue North from no interchange to a diamond interchange constituted a substantial change of conditions from those

which existed at the time the LB classification was placed upon the subject property and that a rezoning of the subject property was therefore required. By automatically equating a substantial change in neighborhood conditions with a need to rezone the affected property, the trial court in effect substituted its judgment for that of the village council. As aptly expressed in Hardesty v. Zoning Board, 211 Md. 172, 177, 126 A. 2d 621, 623, the courts, in zoning cases, —

"* * * will not substitute their judgment for that of the legislative body if the question is fairly debatable. The courts will not substitute their judgment for that of the Board as to the wisdom of the action taken. The courts will reverse only where there are no grounds for reasonable debate and where the action of the Board is arbitrary, capricious, discriminatory or illegal." (Citations omitted.)

Even though there may be a significant change in the character of the neighborhood of the subject property, such change in itself does not compel a rezoning "absent probative evidence that no reasonable use can be made of the property in its current zoning classification." See, Wright v. McCubbin, 260 Md. 11, 13, 271 A. 2d 365, 366 (1970). While Sun Oil offered evidence to show that the diamond interchange resulted in greater traffic flow at the intersection in question, it offered no evidence to show that it could not make reasonable use of its property under the permitted uses of the existing LB classifications, e.g., as a medical or dental clinic, nursing home, or office building.

In denying Sun Oil's petition for rezoning, the village council stated that it did not consider a service station to be the best use of the land. Instead, it chose to stand behind its comprehensive zoning ordinance which earmarked the southeast corner of the intersection of County Road No. 18 and 36th Avenue North for limited business use. Such a desire to perpetuate an area of land for certain permitted uses as established by a comprehensive plan does not, without evidence to the contrary, constitute arbitrary or capricious action on the part of the village council.

Since the undisputed facts establish that the village's denial of the rezoning petition was based upon a legislative determination to perpetuate its preexisting comprehensive zoning ordinance which was not proven invalid nor shown to deny Sun Oil a reasonable use of its land, the trial court erred in ordering rezoning.

Reversed.

KELLY, JUSTICE (dissenting).

The trial judge found that the denial by the village of the application to change the zoning classification of the subject property from limited business to general business denied plaintiff the equal protection of the laws and is discriminatory, unreasonable, capricious, arbitrary, and void. There is ample evidence to support that finding.

The subject property was originally (1954) zoned commercial and an automobile service station was permitted on the property upon issuance of a permit. In 1960, the village published a comprehensive plan after an extensive study by professional planners. That plan designated the subject property and surrounding land on both sides of 36th Avenue North for development of a major shopping center. Then in June of 1960, the village enacted Ordinance No. 60-19 zoning the 200 feet by 200 feet parcels on the northeast and southeast corners of the intersection of County Road 18 and 36th Avenue North as limited business (LB). The purpose of this zoning was to advise the public that the vacant land near that intersection would be used commercially as stated in the published comprehensive plan but the exact extent of the commercial use could not be determined until the highway plans for the intersection were completed. In 1963, the village zoned the 6.25 acres including the subject property as limited business (LB). At that time the county plans for the intersection provided for an overpass with no access to County Road 18 from 36th Avenue North and no access to 36th Avenue North from County Road 18. But subsequent to that ordinance, the county changed its planning and adopted plans for a diamond interchange instead.

In November 1966, the owner of about 4 acres of vacant land directly across the street from the subject property applied for and received a rezoning of his property from LB and single family residence (SR) to retail business (RB) including a special-use permit for a service station on about 1 acre. That owner proposed that the other 3 acres be used as a shopping center.

The following findings by the trial court illustrate that there was a substantial change in conditions since the property at that intersection was zoned LB. More importantly, the village recognized that change and acted on it for the benefit of the owner of the 4-acre tract directly across the street from the subject property.

"16. The basis upon which the Village Council approved said application for a service station and shopping center was that conditions had changed since the property was zoned LB and SR in that at the time of the rezoning application, the plans for the intersection of County Road 18 and 36th Avenue North were changed and provided for a diamond interchange. The New Hope Staff Report submitted to the Village Council in support of the rezoning application stated, in part, as follows:

" 'The property involved is located at the northeast corner of the intersection of 36th Avenue and County Road 18. Until recently there was a question as to the type of interchange between these thoroughfares, if any, and in fact at one time there was no interchange proposed by the County. As a result the applicant had platted in preliminary form the property in question for single family use. Subsequently an interchange with County Road 18 was designed and recently approved by the Village making possible all turning movements and thus having a very definite impact on the surrounding land * * * (T)he location is a desirable one considering its location at the intersection of two major thoroughfares.' [Italics omitted].

\* \* \* \* \*

"31. The change in the plans for the intersection of County

Road 18 and 36th Avenue North from no interchange to a diamond interchange constituted a substantial change of conditions from those that existed at the time that the Limited Business (LB) zoning classification was placed upon the subject property. As a result of this change, it became self-evident that the subject property must be devoted to commercial uses served by automobiles such as a shopping center and service station consistent with the comprehensive plan as originally published. The Village Council acknowledged this fact when it rezoned the land across the street from the subject property and the same facts and circumstances apply, with even greater impact, to the subject property and the surrounding land."

Within 9 months after the property across the street was rezoned and a permit for a service station was granted, application was made by the owner of the subject property to rezone from LB to RB with a request for a special permit so that a service station might be built on the subject property. The village denied the application without making any findings or conclusions nor stating any reason for the denial.

The right to use retail business property for service stations by special permit was part of the ordinance adopted after extensive study and professional consultations. Nonetheless, the village amended this zoning ordinance eliminating the provision which authorized special permits for service stations in the retail business zone. That change was made after the property across the street from the subject property was rezoned to retail business and a special permit issued for a service station and after an application for the same treatment had been made for the subject property. No reason was offered by the village for the change.

In 1968, an application was again made to the village to change the zoning of the subject property from LB to general business GB. The village denied this application making no findings or conclusions nor giving any reason for the denial.

The trial court found that the subject property is better suited for use as a service station than the 1-acre tract immediately

across the street which the village approved for such use.[1] This doesn't mean that the 1-acre tract was not an appropriate site for a service station. Indeed, it was an excellent site. Thus, it be-

---

[1] The trial court found on undisputed facts:

"24.  When the Village Council denied plaintiff's applications:

(a)  Approximately twelve acres of land surrounding the subject property on the south side of 36th Avenue North and on both sides of Hillsboro Avenue were vacant and undeveloped;

(b)  The 6.25 acre tract of land of which the subject property was a part was zoned for commercial uses in the Limited Business (LB) zone;

(c)  The property abutting the 6.25 acres on the south was developed with apartment houses;

(d)  The nearest existing single family home south of the subject property was 850 feet away; the nearest existing single family home east of the subject property was 380 feet away; an automobile service station existed immediately across the street from the subject property on the north; and all of the land west of the subject property to County Road 18 was vacant and undeveloped;

(e)  A diamond interchange between 36th Avenue North and County Road 18 had been approved by the County of Hennepin;

(f)  A shopping center had been planned and approved by the Village Council for the approximately three acre tract between the Shell service station and existing single family homes on the north side of 36th Avenue North.

(g)  The only possible accesses to the shopping center that the Village Council had approved on the north side of 36th Avenue North were through the Shell service station driveway and via a narrow roadway from Jordan Avenue which was fully developed on both sides with single family homes.

(h)  The property surrounding the Shell service station and the adjacent shopping center site had been developed with single family homes which were occupied and well-maintained, and had suffered no adverse effects; and

(i)  The land on the west side of County Road 18 across from the subject property was zoned commercial and devoted to commercial uses.

\*  \*  \*  \*  \*

"26.  36th Avenue North is a heavily travelled arterial roadway that runs through the Village of New Hope and extends all the way into the

came an excellent yardstick to measure the actions of the village in denying Sun Oil's application for the same zoning classification and permit for a site even more suitable for a service station.

Standing alone, the single fact that the subject property was across the street from the 4-acre tract used for comparison would not necessarily require the same zoning treatment. However, that

City of Minneapolis. On February 24, 1971, before the on and off access ramps to County Road 18 were completed, 4,710 automobiles passed in front of the subject property on 36th Avenue North. Approximately 12,000 cars per day travel on County Road 18 at its intersection with 36th Avenue North.

"27. Approximately twelve acres surrounding the subject property remains vacant and undeveloped. The 6.25 acre tract of which the subject property is a part is still vacant and undeveloped. Approximately six acres of land across Hillsboro Avenue east of the subject property is also still vacant and undeveloped. The land abutting the property south of the 6.25 acres is now developed with apartment houses. The property on the west side of County Road 18 immediately across from the 6.25 acre tract is now being used for the operation of a service station, bus garage, pizza parlor, liquor store, animal hospital, tool and die company, and other commercial uses. At the present time, there is an extensive single family development surrounding the Shell service station and the shopping center which is now in construction adjacent thereto, and all of the existing homes are occupied and well-maintained.

"28. There are no single family homes near or adjacent to the subject property.

"29. There is no property or existing use of any property near or adjacent to the subject property that will be adversely affected by the construction and operation of a service station on the subject property.

\* \* \* \* \*

"32. The subject property and the adjacent vacant land is far more suitable for the construction and operation of a service station and shopping center than the land across the street upon which the Village Council approved a service station and shopping center. A large twelve acre vacant, undeveloped, existing buffer area exists between the subject property and any existing or proposed single family dwellings. This buffer area is far more effective and superior to the 70 foot buffer area between the Shell service station and shopping center which was approved by the New Hope Village Council.

\* \* \* \* \*

"38. There is no reason related to the public health, safety or wel-

fact is only one facet of the total circumstances involving both tracts which lead the trial court to find that the subject property was more suitable for a zoning classification permitting a service station than the site of the service station across the street. The significant factors are that from the beginning the 4-acre tract and the subject land were scheduled for identical treatment. They were similarly situated in quadrants of an intersection of two major thoroughfares. The original comprehensive plan designated both of them for use as shopping centers. The subject property and the similarly situated 1-acre tract across the street were zoned for commercial purposes from the initial zoning. Considering the character of all the property surrounding the subject property, as the trial court very carefully did, I concur in the viewpoint of the trial court that there is no reason related to the public health, safety, or welfare which justifies limiting the uses of the subject property to those authorized by the LB zoning classification. See, footnote 1, finding 38.

---

fare which justifies limiting the uses of the subject property to those authorized by the Limited Business (LB) zoning classification. The property immediately across the street from the subject property is used for the operation of an automobile service station, and the approximately three acre tract abutting said service station has been approved by the Village Council for use as a shopping center. The property surrounding the said service station and proposed shopping center is all fully developed with single family homes. The subject property abuts a heavily travelled street, is adjacent to an off ramp from the County Road 18 freeway, and it is surrounded by more than twelve acres of vacant land. A shopping center has been proposed for the six vacant acres abutting the subject property on the south. The approximately six acres of land abutting Hillsboro Avenue immediately east of the subject property is vacant and undeveloped. Reasonable commercial uses have also been proposed for the development of this property. There are no existing single family homes abutting the subject property or the surrounding vacant land. The Court finds that in the light of the numerous proposals for the use of the subject property and the surrounding vacant land for commercial purposes, it is unlikely that said surrounding vacant land or the subject property will be used or developed with single family homes."

The trial court also found that the proposed use of the subject property was suitable and proper in addition to such use being consistent with public health, safety, and welfare.

No doubt the village, with a view to making it even more difficult for the owner of the subject property to ultimately use the property for a service station, amended its zoning ordinance so that permits for such stations could no longer be obtained under a retail business classification but would only be permitted in a general business district. A reading of a portion of the 1960 zoning ordinance shows how inappropriate this action was:

"5. GB General Business Districts: These areas are designed for those businesses that tend to service other businesses and industry rather than the homeowner. They also tend to be less compatible with residential areas than other types of business. Because of these factors, businesses in this zoning classification are concentrated and are as insulated as possible from residential areas." New Hope Ordinance No. 60-19, Section III, Subd. A, 5.

Any comprehensive zoning ordinance that would restrict all service stations to a district tending to service other businesses and industry rather than homeowners in areas as insulated as possible from residential areas would make it mighty inconvenient for residents to purchase gasoline and have their cars serviced. Many people find it most convenient to do business with service stations while visiting retail business districts. This change in the ordinance would only make service stations conveniently accessible to one segment of people—those servicing other businesses and industries. Thus, homeowners, the traveling public, etc., would not have the convenience of a service station in or near retail shopping centers, but would have to make a special trip to some concentrated area serving industry. This change shows the village was not adhering to the original comprehensive zoning ordinance and consultations with planning experts. The only plausible reason for this change was an attempt to put a permit

for a service station on the subject property further out of reach of its owner.

In reviewing the facts in this case, it appears that the subject property was scheduled by the village's published comprehensive zoning plan for a shopping center which would qualify for a retail business classification and would allow service stations on a special permit basis. This portion of the comprehensive plan was held in abeyance until plans for the intersection of County Road 18 and 36th Avenue North became definite. When those plans became definite, the village recognized the substantial change in conditions when it rezoned the 4 acres across the street from the subject property and granted a permit for a service station to that property. There was nothing inappropriate about that action—undoubtedly that property was suitable for a service station and shopping center. However, to deny the same treatment to property immediately across the street which was even more suitable for a service station and shopping center than the 4-acre tract points up the arbitrariness and capriciousness of the village council. Can this unequal and unfair treatment be acceptable by saying that a review of such arbitrary actions is narrowed because amending and adopting zoning ordinances is a legislative action? If so, municipalities that want to accomplish an arbitrary and capricious end may do so by rezoning to favor some people and refusing to rezone to thwart the legitimate use of property by others.

It is also obvious that the village has not adhered to its comprehensive zoning plan or ordinance. If that were so, either the 4-acre tract would not have been rezoned RB or the subject property would also have been rezoned RB.

I would either require the village to rezone the property RB, declare the amendment eliminating the granting of special permits for service stations in RB districts void, and order the issuance of a special permit for a service station on the subject

property, or I would sustain the trial court's order directing the village to rezone the subject property as a GB district.[2]

TODD, JUSTICE (dissenting).

I join in the dissent of Mr. Justice Kelly.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration of this case.

---

[2] I have not discussed the trial court's finding regarding the village's denial of the application for the waiver of the platting ordinance as this was a pro forma matter which was an afterthought raised after the trial by correspondence and is not a matter of any great importance. The village could have objected to the proposed site plan and issued a special permit conditioned upon the filing of a plat showing reasonable access to the remaining 4.25 acres.