Mark **FREUNDSHUH**, et al.,
Appellants,

v.

**CITY OF BLAINE**, Respondent.

No. C7–85–1911.

Court of Appeals of Minnesota.

March 25, 1986.

Charles R. Weaver, Steven T. Hetland, Eric A. Short, Minneapolis, for appellants.

Pierre N. Regnier, Thomas M. Sweeney, St. Paul, for respondent.

Heard, considered and decided by LESLIE, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellant Mark Freundshuh brought a declaratory judgment action against respondent City of Blaine after the city denied his rezoning application. Appellant alleged that the denial was arbitrary, capricious, and unreasonable. Appellant also alleged that the denial deprived him of due process and equal protection and that it was an unconstitutional taking of property without just compensation. Finally, he alleged that Blaine acted under color of law in violation of 42 U.S.C. § 1983 (1982). He sought injunctive relief and damages.

Following cross-motions for summary judgment, the trial court granted summary judgment for respondent. Freundshuh appeals from judgment entered pursuant to the trial court's order. We affirm.

## FACTS

Appellant owns a 21.75 acre tract of land in Blaine, Minnesota. Before appellant purchased the land in 1977, the tract was given its current Farm Residence (FR-1) zoning classification. Farm Residence zoning permits single family residences together with public uses and general farming. The minimum property size permitted per dwelling is four acres. Appellant's own home is the only improvement on the land. The rest of the land is 25% wooded and 75% open land.

Appellant filed a rezoning application with Blaine in January 1984. He sought to subdivide the property into 63 single family lots. His proposal required rezoning the tract to Single Family (R-1), a classification with a minimum lot size of 10,000 square feet. The community development staff of the city's planning commission recommended approval of the application, subject to numerous conditions that included requirements for extension of water and sewage lines to the property.

Both the planning commission and the city council held public hearings on the matter. The commission recommended denial of the rezoning request. The city council concurred and issued a resolution denying appellant's application. The city issued extensive findings to explain its decision. Appellant challenges the city's action as impermissibly inconsistent with the city's comprehensive plan and asserts that the findings demonstrate that the city acted arbitrarily and capriciously.

In 1982, the city adopted a comprehensive plan as required by the Metropolitan Land Use Planning Act. *See* Minn.Stat. § 473.858 (1984). Subsequently, the city adopted a new comprehensive zoning code for use in conjunction with the plan. The plan specifies that appellant's property is to be developed as a single family residential district.

The comprehensive plan does not define "single family residential," but it permits single family residential units in four zoning districts: Agriculture, Farm Residence, Residential Estate, and Single Family. The zoning code states the intent of Single Family districts is to allow the construction of low density single family units in developing portions of the city where sanitary sewer and water services are available. Farm Residence districts are intended for areas where urban services are not presently available. The trial court found that sanitary sewer and water services are not presently available on appellant's property.

## ISSUE

Was respondent's refusal to grant appellant's rezoning request arbitrary and capricious?

## ANALYSIS

■ Where a municipality acts in its factfinding or legislative policymaking capacity under its delegated powers, the scope of review is very narrow, and the city's actions are subject only to the broad limits of the arbitrary and capricious standard. *Amcon Corp. v. City of Eagan*, 348 N.W.2d 66, 72 (Minn.1984). As a legislative act, respondent's rezoning classification must be upheld unless appellant proves either that the classification is unsupported by any rational basis related to promoting the public health, safety, morals, or general welfare, or that the classification amounts to a taking without compensation. *Id.* (citing *Rochester Association of Neighborhoods v. City of Rochester*, 268 N.W.2d 885, 888 (Minn.1978)). The rational basis test means that "even if the city council's decision is debatable, so long as there is a rational basis for what it does, the courts do not interfere." *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 415 (Minn.1981).

■ The original zoning classification of property is presumed to be well planned, and it is expected to be somewhat permanent. *Honn*, 313 N.W.2d at 419 (citing *Sun Oil Co. v. Village of New Hope*, 300 Minn. 326, 335, 220 N.W.2d 256, 261 (1974)). To overcome the presumption, appellant must show either that there was some mistake in the original zoning or that the char-

acter of the neighborhood has changed to such an extent that no reasonable use can be made of the property in its current zoning classification. *Id.* Respondent specifically found that no facts were presented indicating either that the FR–1 zoning was a mistake or that the character of the surrounding property had changed to the extent that no reasonable use could be made of the property in its current zoning status. There is no evidence that contradicts these findings.

■ Respondent may not adopt any official control or fiscal device that conflicts with its comprehensive plan. Minn. Stat. § 473.865, subd. 2 (1984). Moreover, "a refusal to zone [in accord with the comprehensive plan] is evidence that the city is acting in an arbitrary manner." *Amcon,* 348 N.W.2d at 75. Appellant asserts that the denial of his rezoning request is inconsistent with respondent's comprehensive plan, such that respondent must be found to have acted arbitrarily under *Amcon.*

We cannot agree. This case does not present the same situation as in *Amcon.* There, the property in question was designated as "roadside business" by the city's comprehensive plan but the city refused the property owner's request that it be rezoned as "roadside business." *Id.* at 75. In contrast, respondent's comprehensive plan specifies that appellant's property is to be developed as "single family residential." Four zoning districts permit single family residential units, including FR–1, the property's present zoning classification, and R–1, the classification appellant desires. A zoning classification of either FR–1 or R–1 is consistent with the comprehensive plan.

In addition, the court in *Amcon* held that the city's refusal to rezone "without stating any justification for the refusal is arbitrary and capricious." *Id.* In the present case, the city issued extensive findings explaining and justifying its decision. Many of the findings reinforce the city's growth and development policies as set forth in the plan. For example, the plan encourages new developments where urban services such as major highways and sewer services are already available or can be easily extended. Two findings relate to such services. Finding 5 states that the currently available services are compatible with the development of the entire area as a large lot residential development rather than development as an R–1 district. Finding 6 states that the construction of the necessary services to accommodate appellant's property would result in the development of the entire area as R–1, due to pressures for recouping the cost of the construction.

Appellant relies on the report prepared by the city's community development staff to question these findings. The staff recommended approval of the rezoning, subject to several conditions. However, two of the conditions involve precisely this issue: the need for and the cost of an extension of adequate water and sewage lines to service the property if rezoning were granted.

First, the staff report says that the water main servicing the property is insufficient to service the proposed development. The nearest trunk line with sufficient capacity is located several blocks from the property. The staff also determined that the water main proposed by appellant is inadequate.

Second, neither of the two sanitary sewer lines servicing the area can support a high density residential development. Appellant proposed connecting to an already existing trunk line. His proposal was usable, but it would require an amendment to the comprehensive plan because the plan indicates that this area is to be served by another trunk line. A connection into the trunk line presently designated by the plan would require the construction of a lift station. Although appellant agreed to pay for the installation of the lift station and trunk line, his cost of $19,900 would cover only a part of the total cost to the city of $82,400.

Because adequate sewer and water lines are not presently available to service the property, because appellant's proposal for extending sewer lines contradicts the plan's terms, and because extension of the servic-

es would involve construction traversing several city blocks and substantial costs to both the city and adjoining property owners, the denial of appellant's rezoning application in spite of staff conclusions is consistent with the urban expansion goals contained in the plan.

Appellant nevertheless contends that sewer and water lines are presently available on the property. He argues that because the services are available, the plan mandates the rezoning he requests. He relies on the zoning code's definition of "available" as meaning "accessible for use" and on a quote from the plan that "if and when central sewers are extended to this area, the minimum lot size will be decreased from 5 acres to 10–12,000 square feet." Even accepting appellant's definition of "available," the evidence does not substantiate that availability.[1] Respondent provided an affidavit from the city's assistant director of community development specifically stating that sanitary sewer and water services are not available on appellant's property. Appellant has not provided the court with evidence contradicting respondent's evidence on the distance of the tract from existing services and the implications of cost and over-development in further water and sewer extensions. The trial court also found that the services are not available on the property. The utility service maps provided by the parties corroborate the trial court's finding.

From the findings of the city council and the trial court, we conclude that the primary thrust of respondent's comprehensive plan is not the mandatory extension of developed areas, but rather a program of staged growth. We have already discussed some of the council findings that represent this attitude. In addition, Finding 8 states

that the existing land use of the property surrounding three sides of appellant's property is devoted to large lot residential development. Finding 13 states that there is a substantial inventory of existing land zoned for R–1 development and that the need for an additional 63 R–1 lots has not been shown. The trial court's findings include a quote from the zoning code stating that the intent of the Farm Residence districts is to allow for orderly development. All of these considerations provide an ample basis for respondent's decision that appellant's rezoning application was unacceptable and should be denied.

Finally, we note that the maps provided us by the parties show that appellant's land lies in the northeastern sector of the city. The maps also show that the northeastern sector is scheduled for urbanization between 1985 and 1990, not by 1985, as appellant claims. The city council specifically found that the proposed development was premature.

Appellant has successfully asserted the feasibility for development of his property. Because a residential subdivision has already been developed on the land adjoining appellant's land to the north, the development of appellant's property in the same way would not constitute leapfrog development. Appellant's proposal was also conditionally approved by the planning commission's development staff. Nonetheless, respondent's findings reflect a reasoned analysis of the rezoning request within the guidelines for staged growth established by the city's comprehensive plan. Respondent's reluctance to develop appellant's property into an urban subdivision at this time involves fiscal, ecological, and safety concerns. Respondent has not said that it will never permit the area to be developed

1. Our frequent references to the provisions of the comprehensive plan are extracted from a review of the development staff report, the city council's findings, the trial court's findings, and the discussion of the plan in the parties' briefs and appendices. However, our analysis of several of appellant's assertions regarding the comprehensive plan has been greatly hindered by the absence of the plan itself from the trial court record and appellant's failure to provide

copies of the plan to this court. The quote relied on by appellant that mandates a decrease in lot size is particularly troubling. For example, we note the disparity between the reference to a five acre minimum and the unchallenged finding that FR–1 zoning provides for a four acre minimum. We also find the mandatory language incompatible with the advisory purpose of comprehensive plans enacted pursuant to the Metropolitan Land Use Planning Act.

as R–1, only that such development is premature. The refusal to rezone was not arbitrary or capricious.

■ Appellant's alternative claim that respondent's action constituted an unconstitutional taking without compensation is without merit because appellant gave no evidence that his land's value was diminished in any amount and has not demonstrated that he has been deprived of all reasonable uses of his land due to respondent's action. *See Holaway v. City of Pipestone*, 269 N.W.2d 28, 30 (Minn.1978). Because appellant's other constitutional claims as well as his claim under 42 U.S.C. § 1983 are contingent upon a finding that respondent's actions were arbitrary and capricious or that they constituted a taking, we need not address them.

### DECISION

Appellant has not shown that respondent's refusal to grant his rezoning request was arbitrary and capricious. The trial court properly upheld respondent's refusal as supported by a rational basis.

Affirmed.