**WHITE BEAR ROD AND GUN CLUB, Relator,**

v.

**CITY OF HUGO, Respondent.**

**No. C3-85-805.**

Court of Appeals of Minnesota.

Nov. 19, 1985.

Review Granted Jan. 23, 1986.

Thomas J. Barrett, Minneapolis, for relator.

Charles A. Johnson, Hugo, for respondent.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and HUSPENI, J.

## OPINION

HUSPENI, Judge.

The White Bear Rod and Gun Club (Club) appeals by writ of certiorari from a Hugo City Council decision which denied the Club's application for an amendment to its special use permit. The Club contends the City's decision was unreasonable and not supported by the evidence. It asks this court to set aside the City's refusal to amend the special use permit. We dismiss.

## FACTS

In 1971, the Club, a non-profit corporation, obtained an option on eighty acres of land located about 1,300 feet from Rice

Lake. The Club's original site was substantially condemned.[1] Rice Lake is near Hugo, Minnesota, in Washington County. The property in the immediate vicinity is zoned farm-residential and nearby owners use their property for farming, hunting, recreational, and residential purposes. *Minnesota Public Interest Research Group v. White Bear Rod and Gun Club*, 257 N.W.2d 762 (Minn.1977). The Club purchased the property in 1972 and then applied for a special use permit so it could build a trap-and-skeet-shooting facility. At the time of the purchase, the City had not granted any permits to the Club. *Id.* at 765.

In October 1973, after modifying its plans, the Club again applied for a special use permit. The Hugo City Council granted the permit subject to twenty-six conditions. One of the conditions limited noise emission from the Club to forty decibels measured at the Club's property line. The condition was not appealed even though a noise pollution expert told the Club at the time of the hearing before the Hugo City Council that there was no possibility that it could comply with the decibel limitation. *Id.* at 766.

In 1974, before construction of the trap-and-skeet-shooting facility had begun, Minnesota Public Interest Research Group (M.P.I.R.G.) and Hugo Electors Leading Progress (H.E.L.P.) brought an action in Washington County District Court seeking declaratory and injunctive relief which would prohibit the Club from constructing or operating the proposed facility. M.P.I.R.G. and H.E.L.P. specifically alleged that, contrary to Minn.Stat. §§ 116B.01–.13 (1974), noise from the Club operation would substantially degrade the quietude of the area and lead shot would have a toxic effect on the waterfowl and wildlife which feed in the area.

In late 1974, M.P.I.R.G. and H.E.L.P. sought a temporary injunction enjoining any activity at the site. In denying the relief, the trial court noted that:

---

1. For a more complete history of this case and a description of the area, see *Minnesota Public Interest Research Group v. White Bear Rod and Gun Club*, 257 N.W.2d 762 (Minn.1977).

The defendant is fully aware (and it is a matter of record) that it must bear the risk of being limited or totally enjoined in its use of this land as a gun club.

*Id.* at 767 (citing January 15, 1975 trial court order). Construction proceeded.

In 1976, the trial court granted a declaratory judgment in favor of M.P.I.R.G. and H.E.L.P. The trial court specifically found that the Club's activities in constructing and operating a trap-and-skeet-shooting facility on the southern border of Rice Lake constituted pollution, impairment and destruction of the environment. The trial court permanently enjoined the operation of the trap-and-skeet-facility at the Rice Lake location. The Minnesota Supreme Court affirmed the decision, noting that the evidence clearly showed that at no time since the Club began operating had the decibels limit been within the forty decibels limitation. The supreme court further noted:

Plaintiffs in this action did not attempt to show violations of rules or standards but relied upon their right, under the statute, to show that the conduct of the Gun Club materially adversely affected the environment. Plaintiffs alleged that noise pollution by the Gun Club caused and would continue to cause loss of quietude ("quietude" is defined as a "natural resource" Minn.St. 116B.02, subd. 4), and that the loss of quietude would harm both wildlife and persons within the surrounding area.

*Id.* at 768. The supreme court outlined the evidence showing that the Club exceeded the noise limitation. Alfonso Perez, chief of the noise pollution control section of the Minnesota Pollution Control Agency, testified that ordinarily the background noise level in rural areas such as that of Rice Lake would be between twenty and thirty decibels and that the background noise levels at Rice Lake were in the thirties. *Id.* at 771. Another expert, Dr. Stephen Chapman, measured the noise levels with Perez and testified that "[w]e measured the background of this area and it's roughly 35

decibels to 32 decibels. * * * It's a very quiet neighborhood." *Id.* at 772.

The supreme court concluded that the test conducted by Perez, as well as other evidence, fully supported the trial court's finding that:

"[i]t is likely that it is impossible for the defendant Club to operate without unreasonable material acoustical degradation of the surrounding environment."

*Id.* at 777. The only contrary evidence was the testimony of the Club's president. He opined that the noise level from the Club was minimal.

The supreme court refused the Club's request to remit to the Hugo City Council and the Minnesota Pollution Control Agency for further administrative action. The supreme court observed:

It is clear that the City of Hugo has no authority to issue a permit or grant a variance which allows pollution, impairment, or destruction of the environment within the meaning of c. 116B.

*Id.* at 783.

After the 1977 supreme court decision, the Club curtailed operations and installed barriers to reduce noise. It then petitioned the Washington County District Court for removal of the injunction. The petition was denied in 1980. The trial court explained its denial:

It is apparent that limitation of sound emissions to 40 dB would prevent the emission of sound varying substantially from the background levels in the rural area surrounding the Club * * *. As noted in the previous Supreme Court Opinion * * * and substantiated by testimony in this proceeding, background noise levels in this area are frequently in the range of 32 to 35 decibels * * *. Thus a limitation of 40 dB as imposed by the City of Hugo would limit the Club to a level of noise emission that would not significantly impair the background levels of noise in the area.

After the 1980 trial court decision was issued, the Club constructed a sound barrier around one of its trap shooting sites and conducted noise tests. In November 1984,

the Club applied to the City for an amendment to the forty decibels condition in its special use permit. In return, the Club proposed to limit the operations which were allowed by the special use permit. Specifically the Club asked the City to amend the decibel level condition so that "[t]he noise level at any property shall not exceed a reasonable level at any time." In the opinion of the Club's expert, a 55 decibel limitation would constitute a reasonable level. Further, the Club sought to have the noise level measured at homes, not the property line.

The Hugo Planning Commission met on two occasions. All city council members were present. A consultant hired by the Club testified that the average background noise is "not in the low 30's as it was previously presumed" but ranges from 30 to 52 decibels and averages 45.8 decibels. The planning commission recommended that the proposed amendment to the special use permit be denied. The city council unanimously approved a motion to deny and supported its decision with nine reasons including the previous court cases. The Club now appeals.

### ISSUES

1. Does this court have jurisdiction to hear this appeal?

2. Does the Hugo City Council have the authority to issue an amended special use permit which would allow higher noise levels at the Club's facility?

### ANALYSIS

#### I.

■ The City moved to dismiss this appeal on the grounds that certiorari is only appropriate where no adequate remedy is available and Minn.Stat. § 462.361, subd. 1 (1984) provides an adequate remedy. Minn.Stat. § 462.361, subd. 1 states:

Any person aggrieved by [a] * * * decision * * * of a governing body * * * acting pursuant to sections 462.351 to 462.364 may have such * * * decision * * *

reviewed by an appropriate remedy in the district court * * *.

Minn.Stat. § 462.361, subd. 1 (1984). This subdivision does not provide a remedy but only specifies that an aggrieved person may have a decision reviewed by an "appropriate" remedy in district court. Certiorari is appropriate to review a quasi-judicial municipal zoning decision. *See Honn v. City of Coon Rapids*, 313 N.W.2d 409, 414 (Minn.1981). A petition for a writ of certiorari is now properly taken to this court rather than the district court. *See Neujahr v. Ramsey County Civil Service Commission*, 370 N.W.2d 446 (Minn.Ct. App.1985); 1985 Minn.Laws Ch. 165 § 1 (amending Minn.Stat. § 480A.06, subd. 3 (1984)). Thus, this court has the authority to review by certiorari the City's decision.

#### II.

■ The Club argues that the City's refusal to raise the forty decibels condition is unreasonable, unsupported by legally sufficient reasons, and violates due process under the United States and Minnesota Constitutions. Specifically, the Club complains that, in *Minnesota Public Interest Research Group v. White Bear Rod and Gun Club*, the supreme court did not explore whether the forty decibels limitation was reasonable, but rather it determined that the Club caused material adverse effects on the environment and could be enjoined under Minn.Stat. Chapter 116B. The Club further asserts that the forty decibels condition was not studied by the Washington County District Court in 1980 and that, while the forty decibels condition has been discussed, it has not been reviewed in light of the studies now available. It states that none of the court cases are currently relevant and thus, they do not constitute a legally sufficient reason for denying the Club's application.

In *Minnesota Public Interest Research Group v. White Bear Rod and Gun Club*, the court refused to remit the matter to the Hugo City Council and the Minnesota Pollution Control Agency for further administrative action, stating that:

[T]he City of Hugo has no authority to issue a permit or grant a variance which allows pollution, impairment, or destruction of the environment within the meaning of c. 116B.

257 N.W.2d at 783. The court then stated:

Nothing in this opinion is intended to preclude the Gun Club from taking whatever action may be necessary to remedy the conditions found by the trial court to constitute pollution, impairment, or destruction of the natural resources, and, upon proper application and submission of evidence thereof *to the trial court,* resuming use of its property within limitations required by the Minnesota Environmental Rights Act.

*Id.* at 783 (emphasis added).

Mere passage of time has neither diminished the permanent injunction nor given the City of Hugo the authority to issue a permit which allows pollution, impairment, or destruction of the environment. Thus, the Club's application to the City was premature. Rather than applying for an amended special use permit, the Club should have returned to district court. Under the circumstances, the City of Hugo had no jurisdiction to consider the Club's application for an amendment to its special use permit. Therefore, this appeal must be dismissed.

## DECISION

The limitations placed on the Club are those required by the Minnesota Environmental Rights Act. It may not resume use of the property unless it complies with those limitations. Any determination that the Club is now complying with the limitations must be made by the trial court which imposed the permanent injunction, not by the City of Hugo. If the trial court determines that the Club is in compliance with the Minnesota Environmental Rights Act, the Club may reapply to the City for an amendment to its special use permit.

Dismissed.