**Douglas HOSKIN, Respondent,**

v.

**CITY OF EAGAN, a Minnesota Municipal Corporation, Appellant.**

No. C5–01–283.

Court of Appeals of Minnesota.

Aug. 14, 2001.

S. Todd Rapp, S. Todd Rapp, P.A., Apple Valley, MN, (for respondent).

Susan M. Sager, Carla J. Heyl, League of Minnesota Cities, St. Paul, MN, (for appellant).

Considered and decided by
ANDERSON, Presiding Judge,
AMUNDSON, Judge, and FOLEY, Judge.

## OPINION

DANIEL F. FOLEY, Judge [*]

Respondent property owner petitioned appellant city to vacate its existing public utility and drainage easements so that respondent could subdivide his property. After appellant denied respondent's request, respondent sought mandamus, which the district court issued. Appellant now seeks review of the court's order issu-

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

ing mandamus, arguing that mandamus was not the appropriate method to challenge its decision because mandamus applies to ministerial rather than legislative acts. Appellant further argues that, even if mandamus was the appropriate method to challenge its decision, the district court erred by granting mandamus because appellant had a rational basis for its decision and did not abuse its discretion by denying respondent's petition to vacate the easements. Because we conclude that appellant had a rational basis for denying respondent's request to vacate its existing public easements, we reverse.

## FACTS

Respondent Douglas Hoskin owns a large residential lot in an Eagan subdivision. Hoskin petitioned appellant City of Eagan (the city) to vacate its existing public utility and drainage easements so that he could subdivide his property into two smaller lots without conflicting with the existing public easements. After holding two public hearings on the matter, the city decided not to vacate the easements.

Hoskin then petitioned the district court for a writ of mandamus. During a hearing on the matter, the district court determined that the writ should be treated as a declaratory judgment action to be decided on summary judgment. Ultimately, the court granted summary judgment in favor of Hoskin, reasoning that the city did not have a rational basis for denying Hoskin's petition to vacate the public easements. This appeal followed.

## ISSUE

Is a writ of mandamus an appropriate remedy where an administrative body made a legislative determination, or, in the

Minn. Const. art. VI, § 10.

alternative, if the administrative body had a rational basis for its decision?

## ANALYSIS

On appeal from summary judgment, this court examines whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990); *see* Minn. R. Civ. P. 56.03 (setting forth district court standard for summary judgment).

 A court may issue a writ of mandamus "to compel the performance of an act which the law specially enjoins as a duty resulting from an office." Minn.Stat. § 586.01 (2000). A reviewing court will reverse the district court's order on an application for mandamus relief "only where there is no evidence reasonably tending to sustain the [district] court's findings." *Popp v. County of Winona,* 430 N.W.2d 19, 22 (Minn.App.1988) (citing *State ex rel. Banner Grain Co. v. Houghton,* 142 Minn. 28, 30, 170 N.W. 853, 853 (1919)), *review denied* (Minn. Nov. 23, 1988). The court need not defer to the district court's ultimate conclusions of law. *Id.*

Hoskin argues that the city waived its right to argue whether mandamus is the appropriate remedy because the city conceded this issue in district court by agreeing that a declaratory judgment was the appropriate process for the court to address the city's refusal to vacate the easements. A review of the transcript demonstrates, however, that the city appeared to be agreeing that a trial was unnecessary in order for the district court to render a decision. The record further demonstrates that the city was arguing that mandamus was inappropriate because Hoskin had another legal remedy available to him; namely, a declaratory judgment action. *See* Minn.Stat. § 586.02 (2000) (stating mandamus shall not issue where there is another remedy in ordinary course of law). The court's memorandum in support of its order granting summary judgment in Hoskin's favor treated the case as one of mandamus. Based on this record, the city has not waived its right to argue that the court's issuance of the writ of mandamus was inappropriate. But it should be noted that the city does not address the declaratory judgment versus mandamus issue on appeal. Instead, the city argues that mandamus is not the appropriate remedy when an administrative body refuses to grant an applicant's request to vacate public easements.

### 1. Legislative Act

 The city first argues that the district court erred in granting mandamus because the city's refusal to vacate the public easements was a legislative rather than a ministerial act.[1] Although the city fervently asserts that mandamus cannot be applied to legislative acts because such acts require the city's exercise of discretion, case law suggests otherwise. Minnesota case law differentiates between zoning matters that are legislative in nature, and those that are quasi-judicial. *Honn v. City of Coon Rapids,* 313 N.W.2d 409, 416 (Minn.1981). The supreme court has concluded that the standard of review is the same for legislative zoning matters and judicial zoning matters, "namely, whether the zoning authority's action was reasonable." *Id.* at 416–17. The court further recognized that case law expresses the standard in various ways: "Is there a 'rea-

---

1. A ministerial act is "absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated fact." *Kari v. City of Maplewood,* 582 N.W.2d 921, 923 (Minn.1998) (quotation omitted).

sonable basis' for the decision? or is the decision 'unreasonable, arbitrary or capricious'? or is the decision 'reasonably debatable'?" *Id.* at 417. Case law also suggests that a court may issue a writ of mandamus even if an administrative body's act is discretionary. Mandamus is appropriate if a petitioner has shown that (1) the party against whom a writ is directed had a "clear and present official duty to perform a certain act," and (2) if the ordered action is *discretionary, that failure to perform it "was so arbitrary and capricious as to constitute a clear abuse of discretion."* *McIntosh v. Davis,* 441 N.W.2d 115, 118 (Minn.1989) (emphasis added) (citations omitted). Based on relevant case law, the city's argument that the district court could not issue mandamus because the city's refusal to vacate the public easements was a legislative decision based on its exercise of discretion lacks merit. Instead, a court may issue a writ of mandamus even if the administrative body's act was a legislative decision if the body's failure to perform "was so arbitrary and capricious as to constitute a clear abuse of discretion." *Id.*

### 2. *Rational Basis/Abuse of Discretion Standard*

Before a hearing is held to determine if a lot can be subdivided, the applicant must meet the requirements of Eagan Code § 13.11. If the applicant meets the requirements, then the city will hold a public hearing on the matter. Eagan Code § 13.11, subd. 3B. The code further provides:

> In the case of all platting, the planning commission and the council shall be guided by criteria, including the following, in approving, denying or establishing conditions related thereto:
>
> A. That the proposed subdivision does comply with applicable City Code

provisions and the comprehensive guide plan.

> * * * *
>
> C. That the physical characteristics of the site, including, but not limited to, topography, vegetation, * * * susceptibility to flooding, water storage and retention, are such that the site is suitable for the type of development or use contemplated.
>
> * * * *
>
> E. That the design of the subdivision or the proposed improvements are not likely to cause environmental damage.
>
> * * * *
>
> G. That the design of the subdivision or the type of improvements will not conflict with easements of record * * *.

Eagan Code, § 13.20, subd. 6.

Relying on Eagan Code, § 13.20, subd. 6, the city argues that, even if this court concluded that the district court could issue mandamus for a legislative act, the city had a rational basis for refusing to vacate the easements and its decision did not constitute an abuse of its discretion. The city's resolution contains its reasons for refusing to vacate, which do not necessarily correlate with section 13.20. These reasons include:

a.) The city's public need for the use and enjoyment of the existing drainage and utility easements.

b.) The property's physical characteristics do not support the creation of the additional lot and residence.

c.) The adjacent properties' character would be adversely affected if the lots were split.

d.) If the lots were split, one of them would not accommodate a suitable area for the construction of a single-family home in conformance with the city's code and with the neighborhood's character.

Although not reduced to writing in the city's resolution, the record does contain evidence, in the form of the minutes from the city's public hearings on this matter, that supports a rational basis for the city's refusal to vacate. Hoskin's attorney offered these minutes for consideration by the district court. At the time Hoskin submitted his application, Eagan was reeling from floods that had devastated the area, resulting in extensive damage. At the final public hearing regarding Hoskin's application, Councilor Blomquist cautioned:

When they came in with the intent to build these homes and do what they did down there, they were taking in account * * * a drainage. In light of the fact that we've had this horrendous, ah, storm, and what has happened there, why would we be taking away more land that held * * * drainage, just to put more surface area and more run off in that pond.

At the same hearing, a developer of the subdivision stated:

I'd like to urge the Council to consider the fact that all the lots in this subdivision that we developed, ah, we intended them to be large. If you approve this, ah, you're going to be sort of denying the neighbors part of the benefit that they thought they were buying into when they came out there * * *.

In addition, Hoskin's neighbor stated:

[Hoskin] is going to ruin the look of the neighborhood and he will be gone. He will not have to live with the consequences of his action. He will take the money from the sale of both pieces of property and leave and that's not exactly kosher with the rest of us. * * * I think it's just a bad precedent to divide your lot and leave. We have a big lot and all of us could do the same thing. It's just not a good idea.

The developer also explained that Hoskin's lot was platted large purposefully in order to accommodate drainage from the entire subdivision. In light of this information, the council members discussed the purpose of Eagan Code § 13.11. Councilor Carlson stated:

I think what we're doing here is that we're taking one of the larger lots and we're making it one of the smallest lots and is, is that [what] this ordinance was built for. Absolutely not, that's not what we did it for. * * * [Hoskin has] to fill to provide for the house, [he has] to move all these easements, [he's] got a storm sewer going right down the side of 'em, I mean all this is saying something to us and that was this lot is not intended to be subdivided.

■ These quoted passages and the rest of the hearing transcripts demonstrate that the city took into account the neighbors' opposition to subdividing the lot, the possible negative effect on drainage if the easements were vacated and moved in light of recent flood damage, and the developer's original reason for creating a large lot in order to accommodate proper drainage for the entire subdivision. According to the minutes from the hearing, the city took into account the broader impact that vacating the easements might have on the community, including the fact that the easements were meant to help a large group of people and that changing them might adversely affect the city in light of the recent flood damage. In addition, unless the city vacated the existing easements, the lot could not be subdivided because it would conflict with easements of record. These factors correspond with the criteria set forth in Eagan Code § 13.20, subd. 6. Because the hearing transcripts are part of the record and support the city's decision, we conclude that the city had a rational basis for denying Hoskin's

request to vacate the easements and did not act arbitrarily or capriciously.

The district court, however, reached a different conclusion. As part of its decision, the court reasoned that the city had no rational basis for refusing to vacate the easements if Hoskin's proposed plan provided adequate easement alternatives. Although the director of public works stated at the public hearing that Hoskin's alternative easement proposal "technically" worked, just because something "technically" works on paper does not mean that it will automatically work if implemented. Considering the city's recent flood battle, it is not irrational for it to be concerned with altering drainage easements in the area when the current easements seemed effective.

## DECISION

Because the record demonstrates that the city had a rational basis for refusing to vacate the public easements, its decision was not so arbitrary and capricious as to constitute a clear abuse of discretion. Therefore the district court erred by granting Hoskin's petition for a writ of mandamus.

**Reversed.**