**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-0603**

Goerke Family Partnership,
Appellant,

Donald Shelstad, et al.,
Plaintiffs,

vs.

Lac qui Parle-Yellow Bank Watershed District,
Respondent,

William Croatt,
Respondent.

**Filed December 15, 2014**
**Affirmed**
**Peterson, Judge**

Lac qui Parle County District Court
File No. 37-CV-12-104

Dennis H. Simpson, Quarnstrom & Doering, P.A., Marshall, Minnesota (for appellant)

Jason J. Kuboushek, Iverson Reuvers, LLC, Bloomington, Minnesota (for respondent Lac qui Parle-Yellow Bank Watershed District)

Matthew P. Franzese, Traverse County Attorney, Alexandria, Minnesota (for respondent William Croatt)

        Considered and decided by Peterson, Presiding Judge; Rodenberg, Judge; and

Reilly, Judge.

**S Y L L A B U S**

1.      When a watershed district's board of managers makes a permitting decision without considering a material issue, the district court hearing a declaratory judgment action challenging the permitting decision must remand the issue to the board for consideration.

2.    The scope of review that applies to agency decisions applies to permit decisions by a watershed district's board of managers.

**O P I N I O N**

**PETERSON**, Judge

Appellant landowner brought this declaratory-judgment action in district court challenging respondent watershed district's approval of respondent landowner's application for a drainage permit.  Following a remand to the watershed district's board of managers for a determination whether the proposed drainage system would be a reasonable use, the district court affirmed the approval of the drainage permit.  Appellant argues that (1) the district court erred in remanding the reasonable-use issue to the watershed-district board, and (2) the drainage system should not be allowed because it expands the slope and highway easements burdening appellant's property.  We affirm.

**FACTS**

Respondent William Croatt applied to respondent Lac qui Parle-Yellow Bank Watershed District for a drainage permit for an agricultural tiling system that would drain about 60 acres of land in the northeast quarter of section 11 in Arena Township.  The water drained from the 60 acres would be directed to a pumping station that would pump

2

the water to a grove in the northeast corner of section 11 at the intersection of 270th Street and County State Aid Highway 17. From the grove, the water would flow north in the west ditch of highway 17 for about one-quarter mile, east through a culvert, and into an established ditch system.

The proposed drainage system was addressed at meetings of the watershed-district board of managers during the spring and summer of 2011. Downstream property owners, including appellant Goerke Family Partnership, objected to the permit application. The downstream property owners were concerned that the culvert could not handle the water from the drainage system and that the amount of water draining onto their properties would increase. The board declined to approve Croatt's permit application due to the opposition of the downstream property owners.

In response to that opposition, Croatt contacted Professional Engineer Erik Jones, who reviewed the proposed system and concluded that the ditch along highway 17 had adequate capacity to handle the drained water and that an adequate outlet existed downstream. The board requested additional information from Jones about the water flowing through the culvert. Jones concluded that Croatt's proposed drainage system would not change the amount of water flowing through the culvert. The county engineer signed the application, indicating that the proposed drainage system would not affect the roadway. After receiving this additional information, the board approved Croatt's permit application.

Appellant brought this declaratory-judgment action in district court challenging the board's approval of Croatt's permit application. Appellant asserted that the board

acted improperly in approving the permit because appellant had not granted a drainage easement over its property along highway 17. Croatt moved for summary judgment. The district court denied summary judgment on the ground that a question of material fact existed on "whether draining water from Croatt's land into the [highway] 17 road ditch is a 'reasonable use' as that term has been developed under Minnesota case law." Croatt requested reconsideration because the summary-judgment order did not address the procedure for resolving the fact issue. The district court granted reconsideration and, on reconsideration, remanded the case to the watershed-district board "for specific factual findings on whether granting the proposed permit constitutes a reasonable use." On remand, the board found that the proposed drainage system would be a reasonable use. The district court rejected appellant's argument that the remand was improper and affirmed the board's decision to issue the permit to Croatt because the decision was supported by substantial evidence and was not arbitrary or capricious. This appeal followed.

## ISSUES

I.     Did the district court err in allowing reconsideration and remanding the issue of reasonable use to the watershed-district board of managers?

II.    Did the board of managers err in determining that the drainage system would be a reasonable use and granting the permit application?

4

## ANALYSIS

## I.

*Reconsideration*

"Motions to reconsider are prohibited except by express permission of the court, which will be granted only upon a showing of compelling circumstances." Minn. R. Gen. Pract. 115.11. We review a district court's decision to allow a motion for reconsideration for an abuse of discretion. *See In re Welfare of S.M.E.,* 725 N.W.2d 740, 743 (Minn. 2007) (stating that motions for reconsideration "are considered only at the district court's discretion"); *Peterson v. Hinz,* 605 N.W.2d 414, 417-18 (Minn. App. 2000) (concluding that district court did not abuse its discretion by allowing motion to reconsider and reversing its earlier order imposing sanctions), *review denied* (Minn. Apr. 18, 2000).

The initial order denying summary judgment did not specify the procedure for determining whether the proposed drainage system would be a reasonable use. Under these circumstances, the district court did not abuse its discretion in allowing reconsideration.

*Remand to watershed-district board of managers*

Appellant argues that, in a declaratory-judgment action, a plaintiff is entitled to a trial, and the district court did not have authority to remand the case to the watershed-district board of managers for a determination regarding the reasonable-use doctrine. We disagree. The Minnesota Watershed Law, Minn. Stat. §§ 103D.001-925 (2012) states:

"[A]n interested party may appeal a permit decision or order made by the managers[1] by a declaratory judgment action brought under chapter 555. . . . *The decision on appeal must be based on the record made in the proceeding before the managers*." Minn. Stat. § 103D.537(a) (emphasis added).

In *Honn v. City of Coon Rapids*, which involved a challenge to a city council's denial of an application for rezoning, the district court declined to conduct a trial and limited its review to the record before the city council. 313 N.W.2d 409, 412-13 (Minn. 1981). On appeal, the supreme court held that "[r]eview of a decision on rezoning may be obtained by a declaratory judgment action" and that the parties were entitled to a trial and could present evidence in addition to that presented to the municipal body, provided that the evidence was relevant to issues raised before and considered by the municipal body. *Id.* at 416. The court noted that a city council often "conducts its hearings in informal fashion, with no accurate verbatim record kept and with relatively few remarks in its minutes to suffice as its findings of fact and conclusions." *Id.* at 415. The purpose of the trial was to determine whether there was a legally sufficient basis for the municipal body's decision. *Id.* at 418-19.

But in *Swanson v. City of Bloomington*, which involved a challenge to a city council's denial of an application to subdivide a residential lot, the supreme court limited the holding in *Honn*. 421 N.W.2d 307 (Minn. 1988). After stating that *Honn* did not

---

[1] "'Managers' means the board of managers of a watershed district." Minn. Stat. § 103D.011, subd. 15.

6

require "a trial or augmentation of the record in every case," the supreme court explained the procedure for review of a permit decision:

> [A] district court should establish the scope and conduct of its review of a municipality's zoning decision by considering the nature, fairness and adequacy of the proceeding at the local level and the adequacy of the factual and decisional record of the local proceeding. Where the municipal proceeding was fair and the record clear and complete, review should be on the record. . . .
>
> . . . .
>
> Where the municipal proceeding has not been fair or the record of that proceeding is not clear and complete, *Honn* applies and the parties are entitled to a trial or an opportunity to augment the record in district court.

*Id.* at 312-13.

The supreme court addressed the issue of a remand to a zoning authority to further develop the record in *Earthburners, Inc. v. Cnty. of Carlton*, which involved a declaratory-judgment action challenging a county board's denial of a conditional-use permit. 513 N.W.2d 460 (Minn. 1994). Because the county board's record indicated that its decision was premature and the decision did not show that the board considered the relevant ordinance criteria, the supreme court remanded to the board so that it could reconsider the permit application. *Id.* at 461-63. The supreme court explained:

> [W]e have been reluctant to allow local boards an opportunity after the fact to substantiate or justify earlier decisions. However, where, as here, the board has failed to discharge its responsibilities in connection with this application, we are compelled to offer it the opportunity to do so and to develop a record to allow meaningful appellate review. However, to prevent any unfairness to the applicant, the board must confine its inquiry to those issues raised in earlier proceedings

7

> before the planning commission and county board while allowing adequate opportunity for a meaningful discussion of those issues.

*Id.* at 463 (citation omitted).

Minnesota law permits a property owner to drain surface waters onto another's land if the elements of the reasonable-use doctrine are met. *Kral v. Boesch*, 557 N.W.2d 597, 598-99 (Minn. App. 1996). Therefore, because the watershed-district board did not consider the reasonable-use doctrine and the record was inadequate to allow meaningful appellate review by the district court, the parties were not entitled to a trial, and a remand to the board of managers was permitted. The right to a trial was also restricted by the statement in Minn. Stat. § 103D.537(a) that "[t]he decision on appeal must be based on the record made in the proceeding before the managers."

Under the plain language of Minn. Stat. § 103D.537(a), the district court is limited on appeal to review of the record made before the board of managers. Therefore, the district court acted properly by remanding the issue of reasonable use to the watershed-district board of managers for determination and creation of a record. Following the remand, the district court properly reviewed the record to determine whether the watershed district's decision to issue the permit was reasonable. *See Swanson*, 421 N.W.2d at 311 (stating that the standard of review of a zoning authority's action is whether there is "a reasonable basis for the decision" (quotation omitted)).

**II.**

*Scope of Review*

In *Northwestern College v. City of Arden Hills*, the supreme court explained an appellate court's scope of review in zoning matters as follows:

> Although earlier decisions may have left some doubt with regard to the appropriate scope of review in such cases, no doubt can remain in the wake of this court's clarification of the issue in *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 822 (Minn. 1977). In that case, addressing the issue of the proper scope of review of an agency decision, we wrote: "We . . . expressly adopt a rule which we have heretofore tacitly accepted, that it is our function to make an independent examination of an administrative agency's record and decision and arrive at our own conclusions as to the propriety of that determination without according any special deference to the same review conducted by the [district] court." 256 N.W.2d 824. Although *Reserve Mining* only addressed the review of *agency* decisions, the articulated reasons for the rule enunciated make clear that the same scope is appropriate in reviewing the decisions of local governing bodies in zoning matters. *See, also, Barton Contracting Co. Inc. v. City of Afton*, 268 N.W.2d 712 (Minn. 1978), and *Amdahl v. County of Fillmore*, 258 N.W.2d 869 (Minn. 1977), in which we independently examined the action of the local governing body to determine its propriety, rather than merely reviewing the decision of the district court for clear error. Thus, in light of *Reserve Mining*, *Amdahl*, and *Barton*, it is clear that this court's role in the present case is to review the decision of the Arden Hills City Council, independent of the findings and conclusions of the district court.

281 N.W.2d 865, 868 (Minn. 1979) (citations omitted).

*Northwestern College* and the cases cited therein involved the review of city-council or county-board decisions. Like those bodies, a watershed district is a political subdivision of the state. Minn. Stat. § 103D.225, subd. 6. We, therefore, conclude that

9

the scope of review that applies to agency decisions applies to permit decisions of a watershed district's board of managers, and we review the decision of the board of managers, independent of the findings and conclusions of the district court.

*Standard of review*

Although caselaw distinguishes between zoning matters that are legislative in nature, such as rezoning, and those that are quasi-judicial, such as variances and special-use permits, "the standard of review is the same for all zoning matters, namely, whether the zoning authority's action was reasonable." *Honn*, 313 N.W.2d at 416-17. This standard has been expressed in various ways: "Is there a 'reasonable basis' for the decision? Or is the decision 'unreasonable, arbitrary or capricious'? Or is the decision 'reasonably debatable'?" *Id*. at 417. "[T]he nature of the matter under review has a bearing on what is reasonable." *Id.* In granting or denying a permit, the inquiry is more judicial because the decision involves "applying specific standards to a particular individual use." *Id.*

With respect to the reasonable-use issue that was remanded to the watershed-district board, the applicable standards are set forth in caselaw. A property owner may drain surface waters onto another's land if the elements of the reasonable-use doctrine are met.

> The rule is that in effecting a reasonable use for a legitimate purpose a landowner, acting in good faith, may drain his land of surface waters and cast them as a burden upon the land of another, although such drainage carries with it some waters which would otherwise have never gone that way if
> (a) there is a reasonable necessity for such drainage;

10

(b) reasonable care be taken to avoid unnecessary injury to the land receiving the burden;

(c) the utility or benefit accruing to the land drained reasonably outweighs the gravity of the harm resulting to the land receiving the burden;

(d) where practicable, it is accomplished by reasonably improving and aiding the normal and natural system of drainage according to its reasonable carrying capacity, or if, in the absence of a practicable natural drain, a reasonable and feasible artificial drainage system is adopted.

In determining reasonableness, a court should consider the extent of harm caused, its foreseeability, and the landowner's motive for the action taken. No one factor or circumstance is controlling and what is a reasonable use is a fact question to be resolved depending on the facts of each case.

*Kral*, 557 N.W.2d at 598-99 (quotations and citation omitted).

Appellant argues that the board erred in granting Croatt's permit application because the highway easement burdening appellant's property was not intended for agricultural drainage purposes. But with respect to Croatt's permit application, the board found:

> There is a reasonable necessity for such drainage. Evidence was presented which shows the land to be tiled is in need of additional drainage to improve its crop output. No evidence was presented which disputed the need for additional drainage.

> Reasonable care is being taken to avoid unnecessary injury to the land receiving the burden. [Jones's] hydrology studies show the proposed additional drainage from the Croatt land would result in only a 458 gpm pumping rate and indicated the ditch to which the water is to be drained "appears to have more than 10 times the capacity of the tile pump." The studies further indicated the additional water from the Croatt land "to be essentially unchanged from the existing conditions" and "the capacity of the soil to absorb more runoff than it currently does should be enhanced during the growing season since the soil profile should be drier prior

11

to summer rainfall events as a result of the tile." While there were photographs showing the [highway] 17 ditch full of water during a major flooding [event], there was no evidence presented which disputed the hydrological findings.

The utility or benefit accruing to the land drained reasonably outweighs the gravity of the harm resulting to the land receiving the burden. The hydrology studies indicate there will be no harm to the land receiving the burden. Additionally, there was evidence presented that the Croatt land will receive a benefit and be better utilized with additional drainage.

The proposed drainage is a reasonable and artificial drainage system. All evidence, including the hydrology studies, indicates the proposed drainage is a reasonable and artificial system because it will not exceed the capacity of the current ditch system and because the soil has the capacity to absorb the additional water.

Evidence supports the board's findings, and the board's decision addresses the elements of the reasonable-use doctrine. There was a reasonable basis for the board's decision to grant a permit for Croatt's proposed drainage system, and the decision was not unreasonable, arbitrary, or capricious.

## D E C I S I O N

Because the board initially failed to consider the reasonable-use doctrine, the district court properly remanded the issue of reasonable use to the board for determination. The board's decision finding that Croatt's proposed drainage system meets the elements of the reasonable-use doctrine and granting his permit application was reasonable.

**Affirmed.**

12